**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-3378-WJM-SKC

BONNIE MONTMENY,

 Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

 Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

  This matter is before the Court on Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Partial Summary Judgment ("Motion"). (ECF No. 42.) Plaintiff Bonnie Montmeny filed a response to the Motion ("Response") (ECF No. 43), to which State Farm filed a reply ("Reply") (ECF No. 47). For the following reasons, the Motion is denied.

**I. STANDARD OF REVIEW**

  Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to the proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the

nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND[1]

This action arises out of an October 23, 2017 motor vehicle collision involving Montmeny and another motorist (the "Accident").  (ECF No. 42 ¶ 2.)  Montmeny asserts that she is entitled to underinsured motorist ("UIM") benefits because the other driver involved in the Accident was uninsured and could not compensate Montmeny for her damages, which she claims amount to more than $123,000.00.  (*Id.* ¶ 25.)

On November 10, 2017, Montmeny notified State Farm that she would be submitting a claim for UIM benefits.  (*Id.* ¶ 6.)  On December 8, 2017, State Farm requested that Montmeny provide a signed medical release authorization and a list of medical providers to enable State Farm to obtain her medical records.  (*Id.* ¶ 7.)  On December 27, 2017, Montmeny provided State Farm a signed medical release authorization but not a list of medical providers.  (*Id.* ¶ 8.)  State Farm renewed its request for a list of medical providers on three occasions before Montmeny provided it

---

[1] The following factual summary is based on the parties' Motions and documents submitted in support thereof.  These facts are undisputed unless noted otherwise.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

on April 9, 2019.  (*Id.* ¶ 12.)[2]

On April 9, 2019, Montmeny submitted additional medical records and claimed to have incurred $30,933.98 in medical expenses from the Accident.  (*Id.* ¶ 11.)  Some of her medical records related to a lower-back injury.  (ECF No. 43-3.)  The records included a report from her treating physician Dr. Vanston Masri, which stated that it was "most probable that symptoms [of ongoing backpain] are secondary to associated trauma from [the] motor vehicle accident."  (ECF No. 43 ¶ 4.)

On August 12, 2019, after a review of the documents collected in relation to the Accident, State Farm set the settlement authority for Montmeny's claim at $16,617.81.  (*Id.* ¶ 19.)  On the same day, Montmeny asserts that a State Farm claims adjuster called her counsel and offered $16,000.00 to settle her claim.  (*Id.* ¶ 20.)[3]  Montmeny asserts that "the only justification for this settlement offer was that [State Farm] believed Ms. Montmeny had treated excessively with chiropractic care and there was minimal damage to her vehicle."  (*Id.* ¶ 20.)[4]

On the same day, Montmeny received a correspondence from State Farm offering to settle her claim for $7,490.31.  (ECF No. 42 ¶ 13.)  There is no evidence that the correspondence explained why the settlement offer was so much less than Montmeny's claimed damages.  (*See* ECF No. 43-5.)

---

[2] In the meantime, on June 20, 2018, State Farm issued a payment of $5,000 on Montmeny's UIM claim.  (ECF No. 42 ¶ 10.)

[3] Montmeny supports her assertion with Jesse McGee's affidavit describing the conversation.  (ECF No. 43-28.)  State Farm asserts that Jesse McGee's affidavit mischaracterizes call and asserts that only $7,490.31 was offered.  (ECF No. 47 at 11.)

[4] Again, State Farm denies that Jesse McGee's affidavit is an accurate representation of the call.  (ECF No. 47 at 11.)

On September 27, 2019, Montmeny sent correspondence to State Farm, asking "exactly how [State Farm] valued her claim at $7,490.31." (ECF No. 43 ¶ 25.)  In response, State Farm sent Montmeny a short letter on October 7, 2019, stating that the "offer is considering $5490.31 for specials and $2000 for generals." (ECF No. 42-12.) On October 21, 2019, Montmeny again asked the specific basis for State Farm's evaluation of her claim. (ECF No. 43 ¶ 27.)  State Farm did not respond. (*Id.* ¶ 28.) Having received no response, Montmeny sent another letter with the same request on November 14, 2019. (*Id.*)  On November 20, 2019, State Farm responded but did not explain why it was only covering a small portion of the medical bills Montmeny had submitted; however, State Farm did note concerns regarding a "five-month gap in treatment from 1/29/18-6/22/18." (ECF No. 43-11.)  State Farm's concerns were misplaced since it is undisputed that there was not a five-month gap in treatment. (ECF No. 43 ¶ 36.)

On December 5, 2019, Montmeny once again asked for the exact basis of State Farm's evaluation. (*Id.* ¶ 33.)  On January 22, 2020, State Farm responded that it was only covering her emergency room visit and a portion of her chiropractice visits, and State Farm stated that "the other bills were not considered in our evaluation as they do not appear related to this auto accident." (ECF No. 43-14.)

On January 31, 2020, Montmeny once again asked for the basis of State Farm's determination that the majority of her medical bills were not covered. (ECF No. 43-16.) State Farm responded on February 14, 2020 but did not include any information about how it came to its determination that some injuries were not related to the Accident. (ECF No. 43-18.)

4

On January 22, 2020, State Farm informed Montmeny that her claim would require her to undergo an independent medical evaluation ("IME") with Allison Fall, M.D. (ECF No. 43-15.)  Montmeny's request that State Farm choose a different doctor for the IME was denied.  (ECF No. 42 ¶ 17.)  On February 14, 2020, State Farm was notified that Montmeny had scheduled an appointment for her IME with Dr. Fall.  (ECF No. 43 ¶ 42.)

However, due to the COVID pandemic, the IME was cancelled, and State Farm instead proceeded by obtaining Dr. Fall's review of Montmeny's medical records without a physical exam.  (ECF No. 42 ¶¶ 19–20.)  Dr. Fall concluded that Montmeny sustained soft tissue injuries from the Accident but that she likely reached maximum therapeutic benefit within two months of the Accident.  (*Id.* ¶ 20.)  She determined that a portion of Montmeny's chiropractice treatment was excessive and that the facts of the Accident did not indicate a mechanism for Montmeny's claimed lumbar spine injury.  (*Id.*)  After receiving Dr. Fall's report, State Farm increased its settlement offer to $9,067.81 and issued payments totaling that amount as of July 2, 2020.  (*Id.* ¶ 21.)

Montmeny submitted a report from W. Rafer Leach, M.D., on August 24, 2020, which disputed portions of Dr. Fall's report, including her conclusion regarding the causation of Montmeny's lumbar facet joint injury.  (*Id.* ¶ 22.)  Specifically, he concluded that "as it relates to [the Accident] and documented injuries, the mechanism of trauma is of sufficient magnitude to be biologically plausible to cause the injuries sustained and diagnoses documented in this report, to include sacroiliac joint and lumbar facet injuries."  (ECF No. 42-16 at 14.)  Further, Dr. Leach opined that additional treatment was necessary and related to the Accident and that "it is reasonably probable that Ms.

Montmeny has sustained permanent injury to the sacroiliac joint and lumbar facets." (ECF No. 43 ¶¶ 51–52.)

Montmeny asserts that State Farm's own policy required Dr. Leach's report to be provided to the team manager overseeing this claim and to Dr. Fall, but the claim adjuster did not do so. (*Id.* ¶¶ 65–66.) State Farm contests this point, arguing that Montmeny mischaracterizes its policies, but the Court has reviewed the relevant portion of State Farms policy manual and finds that Montmeny has sufficiently raised a genuine issue of fact on this point. (*See* ECF No. 43-24.)

After Dr. Leach's report was reviewed by the claim adjuster, on September 22, 2020, State Farm declined to increase its settlement offer. (ECF No. 42 ¶ 23.) On October 13, 2020, Montmeny filed suit against State Farm in state court, bringing three claims: (1) breach of insurance contract; (2) common law bad faith breach of insurance contract; and (3) statutory bad faith breach of insurance contract under Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116. (ECF No. 5 at 6–8.) State Farm removed the case to this Court on November 13, 2020. (ECF No. 1.)

### III. LEGAL STANDARDS

To prevail on a claim for common law bad faith in this context, a plaintiff must show that: "(1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010).[5] But to prevail on a claim under C.R.S. § 10-3-1115, a plaintiff need only show that: (1) benefits

---

[5] "[B]ad faith is not limited to a decision to deny a claim; rather, bad faith can occur in the unreasonable refusal to investigate a claim or to gather facts" *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 147 n.7 (Colo. 2007).

were owed under the policy; and (2) the insurer unreasonably delayed or denied payment of plaintiff's claim. *See* C.R.S. § 10-3-1115.

Reasonableness in the insurance context "is ordinarily a question of fact for the jury." *Chateau Village N. Condo. Ass'n v. Am. Family Mut. Ins. Co.*, 170 F.Supp. 3d 1349, 1360 (D. Colo. 2016) (common law claim); *Williams v. Owners Ins. Co.*, 621 F. App'x 914, 919 (10th Cir. 2015) (statutory claim). A finding that an insurer's justification for denying or delaying payment of a claim was "fairly debatable" weighs against a finding that the insurer acted unreasonably. *Sanderson,* 251 P.3d at 1217 (common law claim); *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226–27 (10th Cir. 2016) (statutory claim).

## IV. ANALYSIS

State Farm seeks summary judgment as to Montmeny's second and third claims for common law bad faith breach of insurance contract and unreasonable denial or delay of insurance payment in violation of C.R.S. § 10-3-1115 and 10-3-1116. (ECF No. 42 at 10–11.)[6] Because State Farm does not separate its common law and statutory arguments, the Court addresses both claims together. (*See* ECF No. 42 at 10–12.)

State Farm asserts that, in evaluating the claim, it reasonably relied on the expert medical opinion of Dr. Fall that some of Montmeny's reported injuries—*e.g.*, her lumbar facet injuries—were not attributable to the Accident. (*Id.* at 10–11.) Further, State Farm

---

[6] The Court notes that State Farm failed to argue that it was entitled to summary judgment on Montmeny's breach of contract claim, even though Montmeny failed to submit a list of her medical providers until seventeen months after the Accident. (ECF No. 42 ¶ 12.) For the purposes of this Order only, the Court assumes that Montmeny's delay was not a material breach of contract excusing State Farm's performance.

7

asserts it relied on photos showing minimal damage to Montmeny's car and a repair estimate of less than $2,600.00 from the Accident. (*Id.* at 10.) Finally, State Farm argues that Montmeny cannot demonstrate unreasonable delay because Montmeny herself failed to provide a list of medical providers for seventeen months despite State Farm's numerous requests. (*Id.* at 11.) Thus, State Farm contends that Montmeny has not shown anything more than a good faith dispute about the value of her claim and her bad faith claims fail as a matter of law. (*Id.* at 10.)

The Court disagrees. Montmeny's original claim, supported by numerous medical records, was for approximately $31,000.00. (*Id.* ¶ 11.) The records included a report from her treating physician which concluded in part that it was "most probable" that Montmeny's ongoing backpain was "secondary to associated trauma from [the Accident]." (ECF No. 43 ¶ 4.) After reviewing the record, without consulting a medical expert, State Farm offered to settle the claim for $7,490.31. (*Id.* ¶ 13.) State Farm's internal communication indicate that the claim adjuster did not believe that Montmeny's ongoing back pain was a result of the Accident, and he excluded medical bills related to her back injury from his evaluation of her claim. (ECF No. 42-11 at 1–2.)

Montmeny repeatedly requested that State Farm explain exactly how it valued her claim, and State Farm's responses could be seen by a reasonable juror to have been unreasonably dilatory and unresponsive. On Montmeny's first request, State Farm only responded that the "offer is considering $5490.31 for specials and $2000 for generals." (ECF No. 42-12.) On her second request, State Farm did not respond. (ECF No. 43 ¶ 27, 28.) On her third request, State Farm responded by noting concerns regarding a "five-month gap in treatment," though it is undisputed that there was no

such gap in treatment. (ECF No. 43-11; ECF No. 43 ¶ 36.) On her fourth request, State Farm stated that "the other bills were not considered in our evaluation as they do not appear related to this [the Accident]," but State Farm did not explain *why* it found that the majority of her bills were not related to the Accident. (ECF No. 43-16; ECF No. 43-14.)

Under Colorado law, in determining whether an insurer's delay in paying benefits or its denial of benefits was reasonable, the jury may consider evidence that the insurer's conduct violated C.R.S. §§ 10–3–1113(4) and 10–3–1104(1)(h). *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 971 (Colo. App. 1996), *aff'd*, 955 P.2d 1008 (Colo. 1998). And under § 10-3-1104(1)(h)(XIV), an insurer is prohibited from "failing to promptly provide a reasonable explanation of the basis . . . for denial of a claim or for the offer of a compromise settlement." As discussed above, State Farm failed to explain its offer in response to *four* requests for the basis of the offer over the course of several months. Thus, looking at the facts in a light most favorable to Montmeny, the Court finds that a reasonable juror could determine that State Farm acted unreasonably, in violation of C.R.S. § 10-3-1104(1)(h)(XIV).

In coming to this conclusion, the Court finds the Tenth Circuit's reasoning in *Etherton* instructive. 829 F.3d 1209. In that case, the court found that a plaintiff had produced sufficient evidence of unreasonable delay when:

> evidence showed that after months of communication, [defendant insurance company] sent a letter . . . to [the plaintiff's] counsel expressing concerns about causation because of [the plaintiff's] "preexisting shoulder condition and the fact that he went without treatment for any back complaints for several months." But this conflicted with documentation [the plaintiff] provided months earlier showing he sought treatment for back pain two weeks after the

accident.

829 F.3d at 1227 (citations omitted).  Here, similar to *Etherton*, after months of communication, State Farm responded to Montmeny's request for information about the settlement offer by stating concerns with a 5-month gap in treatment.  (ECF No. 43-11.)  But this conflicted with documentation Montmeny had submitted months earlier showing no gap in treatment.  (ECF No. 43 ¶ 36.)  Thus, applying the reasoning of *Etherton*, the Court finds Montmeny has produced enough evidence to meet her burden on summary judgment.  829 F.3d 1209 at 1227.

Additionally, the Court agrees with Montmeny that there is a genuine issue of material fact regarding whether State Farm violated several of its own policies in the course of administering her claim.  (ECF No. 43 at 25.)  State Farm's Auto Claims Manual states that the letter sent to an insured explaining State Farm's decision to reduce or deny claimed benefits "should also advise that any new information received in response to the report would be forwarded to the reviewer for consideration."  (ECF No. 43-24 at 4.)  But State Farm's letter did not include such language.  (ECF No. 43 ¶ 64.)  Moreover, the Auto Claims Manual states that "if new information is provided by or on behalf of the insured in response to our reconsideration offer as contained in the letter explaining our claim decision, the team manager shall be advised."  (ECF No. 43-24 at 4.)  But when State Farm's claim adjuster received Dr. Leach's report—which included substantial new information—the team manager was not advised before the claim adjuster notified Montmeny that there would be no increase to State Farm's settlement offer.  (ECF No. 43 ¶ 66.)

Insurance companies' internal policies and guidelines can serve as evidence of industry standards, which are relevant to the reasonableness analysis.  *Tucker v.*

*Allstate Prop. & Cas. Ins. Co.*, 2021 WL 2805450, at *2 (D. Colo. July 6, 2021) (finding the defendant's claim handling manual relevant to the bad faith breach of insurance contract analysis). Thus, in addition to the genuine issue of fact regarding State Farm's alleged violation of C.R.S. § 10-3-1104(1)(h)(XIV), there is also a genuine issue of fact regarding State Farm's violation of its own policies. Both factual disputes prevent judgment from being entered as a matter of law on Montmeny's bad faith claims.[7]

## CONCLUSION

For the foregoing reasons, the Court ORDERS that State Farm's Motion for Partial Summary Judgment (ECF No. 42) is DENIED as set forth herein.

Dated this 31st day of May, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge

---

[7] State Farm makes no independent argument regarding the second element of Montmeny's common law bad faith claim; instead, it states: "If Plaintiff cannot demonstrate [State Farm] acted unreasonably . . ., she certainly cannot prove [State Farm] acted with knowledge or reckless disregard of unreasonableness." (ECF No. 42 at 11.) This argument is unavailing because the Court finds that Montmeny *has* met her burden on the first element. *See also United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (cursory arguments not meaningfully developed by any analysis or citation are deemed waived). Additionally, the Court finds that there are at least two genuine issues of material fact preventing judgment as a matter of law on the second element: (1) State Farm's reference to a non-existent gap in coverage in response to Montmeny's request for information about its evaluation of her claim; and (2) Montmeny's purported violation of its own policies. *See supra* 7–10.

11